**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Cenque M. Somerville,<br><br>Plaintiff,<br><br>v.<br><br>S. Ali, *et al.*,<br><br>Defendants. | ) | Case No. 24 C 2575<br><br>Hon. Franklin U. Valderrama |

**ORDER**

Plaintiff Cenque Somerville initiated this *pro se* civil rights action under 42 U.S.C. § 1983, seeking redress for an allegedly unconstitutional traffic stop and search of his belongings in March 2024. On December 16, 2025, the Court held that Plaintiff's amended complaint [28] failed to state a plausible Section 1983 claim against the City of Chicago under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) [34]. Because the approach established by *Monell* is the only means for establishing municipal liability under Section 1983, *see, e.g., Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004), the Court dismisses Count III as alleged against the City of Chicago pursuant to its requirement to screen a complaint under 28 U.S.C. 1915A. The City of Chicago's Motion to Dismiss Count III of the Amended Complaint [36] is denied as moot. This dismissal is without prejudice. The Clerk of Court is instructed to terminate the City of Chicago's status as an active defendant in this litigation. For the reasons set forth in the Statement section of this order, Defendants Officer Ramirez and Officer Ali's (collectively, the "Defendant Officers") Motion to Dismiss Plaintiff's Amended Complaint [38] is granted in part and denied in part. Plaintiff's official capacity claims against the Defendant Officers are dismissed without prejudice. In all other respects, the Defendant Officers' motion to dismiss is denied.

**STATEMENT**

Plaintiff Cenque Somerville initiated this *pro se* civil rights action under 42 U.S.C. § 1983, seeking redress for an allegedly unconstitutional traffic stop and search of his belongings in March 2024. In its October 5, 2025, screening order (Dkt. 19), the Court found that Plaintiff's initial complaint[1] included sufficient facts to plausibly suggest the traffic stop conducted by Officer Ali and Officer Ramirez (hereinafter, the "Defendant Officers") violated his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution. The Court further held that Plaintiff failed to sufficiently state a claim against the Defendant Officers based on an allegedly unconstitutional search or against the City of Chicago under the standard articulated in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (*Id.*) Plaintiff subsequently filed an amended complaint (Dkt. 28 ("Am. Compl.")) which the Court again screened pursuant to 28 U.S.C. § 1915A. The Court held that Plaintiff's amended complaint sufficiently stated claims as articulated in Count I (unlawful

[1]Plaintiff later admitted that his initial complaint had been signed by someone other than himself, and the Court struck the initial complaint from the docket. (Dkt. 34.)

search and seizure), Count II (false arrest and illegal detention), and Count III (racial discrimination and equal protection). (Dkt. 34.) Again, the Court found that Plaintiff failed to state a plausible "*Monell* claim" against the City of Chicago. (*Id.*) Now before the Court are motions to dismiss filed by the City of Chicago (Dkt. 36) and the Defendant Officers (Dkt. 38).

As the Court stated in both its October 5, 2025 order and its December 16, 2025 minute entry, "[i]n order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." (Dkt. 34 (citing Dkt. 19 (quoting *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)).). Therefore, because Count III does not allege an official policy or custom, and the Court already dismissed Plaintiff's *Monell* claim against the City of Chicago (R. 34), there are no remaining viable claims against the City of Chicago. The Court therefore dismisses Count III against the City of Chicago pursuant to its requirement to screen a complaint under 28 U.S.C. 1915A, which, as previously stated, requires the Court to screen Plaintiff's complaint and dismiss the complaint, or any portion of the complaint, if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from an immune defendant. (Dkt. 34 (citing 28 U.S.C. § 1915A; *Jones v. Bock*, 549 U.S. 199, 214 (2007)).). The Court denies the City of Chicago's motion to dismiss as moot.

The Court begins its review of the Defendant Officers' motion by observing that its previous screening orders under 28 U.S.C. § 1915A employed the same standard that applies to Rule 12(b) motions to dismiss. *Schillinger v. Kiley*, 954 F.3d 990, 993–94 (7th Cir. 2020). Further, the Court is obligated to liberally construe *pro se* complaints, "holding them to a less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). At the pleading stage, Plaintiff bears the burden of articulating a plausible right to relief, which means including sufficient factual detail to suggest "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As a matter of housekeeping, the Court notes that Plaintiff does not object to the Court dismissing his official capacity claims against Officer Ali and Officer Ramirez. (Dkt. 42 at 9.) These claims are therefore dismissed without prejudice.

The Defendant Officers' "central argument" in their motion to dismiss is that the traffic stop on March 4, 2024, could not have been unlawful, because "Illinois law requires that both drivers and passengers wear seatbelts." (Dkt. 43 at 1 (citing 625 ILCS 5/12-603.1(a)).)[2] The mere existence of a traffic ordinance, however, does not mean police officers can stop drivers with impunity as long as they cite the ordinance as the reason for the stop. A traffic stop is only lawful under the Fourth Amendment if the officers have "a particularized and objective basis for suspecting the particular person stopped of criminal activity," otherwise referred to as "reasonable suspicion." *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020) (citation omitted); *see also Ford v. Wilson,* 90 F.3d 245, 248 (7th Cir. 1996) ("a stop of a vehicle by a police officer […] will not pass constitutional muster unless based on articulable suspicion that a traffic offense has been

[2]The Defendant Officers' argument on this point does not address whether the exception for back seat passengers in a taxicab applies to paying passengers in a rideshare vehicle under Illinois law. *See* 625 ILCS 5/12-603.1(b)(11) ("Paragraph (a) shall not apply to any of the following: […] A back seat passenger of a taxicab.").

committed"). This objective standard depends on "the facts available to the officers at the moment of the seizure." *Jackson*, 962 F.3d at 357. Plaintiff alleges that the traffic stop at issue in this case occurred when he was riding as a paying customer in an Uber rideshare vehicle with tinted windows. (Am. Compl. ¶¶ 8, 11.) Despite Officer Ali's statement that "the reason for the stop was that Plaintiff was not wearing a seatbelt," Plaintiff was never issued a citation or ordinance violation for a seatbelt infraction. (*Id.* ¶¶ 9, 14.) There may be any number of reasons why the Defendant Officers did not issue Plaintiff a citation, and the Court declines to speculate as to what the actual reason (or reasons) may have been. Regardless, whether an officer had an articulable suspicion that a traffic violation occurred is a fact-intensive inquiry that can be difficult to address at the motion to dismiss stage. *See Jackson*, 962 F.3d at 359 ("The reasonable suspicion determination is fact-intensive and fact-dependent; each case presents a different set of facts and circumstances that courts must carefully examine in light of the law alleged to have been violated."). At this stage of the litigation, the Court finds Plaintiff has pleaded sufficient facts for his Fourth Amendment claim based on an allegedly unlawful traffic stop to proceed.

The Defendant Officers next argue that Plaintiff has failed to sufficiently allege they were each personally involved in the search of his fanny pack and backpack, instead relying on impermissible "collective pleading." (Dkt. 39, at 5.) Liability under Section 1983 requires personal involvement. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) ("An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.") (emphasis in original) (citation omitted). In this case, Plaintiff has alleged that, in the context of the traffic stop, "the officers demanded identification and made statements suggesting that African Americans often 'keep guns' in their fanny packs" and that his fanny pack and backpack "were searched" without a warrant, consent, or probable cause. (Am. Compl. ¶¶ 12, 13.) While not a model of pleading, the most natural reading of the amended complaint is that Plaintiff is "directing this allegation at" both Defendant Officers. *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009); *see also Schillinger*, 954 F.3d at 994 (at the screening stage, courts "draw[ ] all reasonable inferences in the plaintiff's favor"); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("we will read Gentry's complaint […] more generously, because he was a *pro se* litigant at the time"). The allegations set forth in Plaintiff's amended complaint are sufficient to "put the defendants on notice of what exactly they might have done to violate [Plaintiff's] rights under the Constitution." *Brooks*, 578 F.3d at 582. No more is required to state a plausible claim that Plaintiff's belongings were unlawfully searched under the Fourth Amendment.

With respect to Count II, the Defendant Officers argue that Plaintiff has failed to plead facts showing that any arrest or detention took place beyond the scope of the initial traffic stop. The Court disagrees. As the Seventh Circuit has explained, "[a] traffic stop is unlawfully prolonged when police detour from the mission of the stop." *United States v. Avila*, 106 F.4th 684, 695–96 (7th Cir. 2024); *see also United States v. Cole*, 21 F.4th 421, 427–28 (7th Cir. 2021) (*en banc*) ("A detour that 'prolongs the stop' violates the Fourth Amendment unless the officer has reasonable suspicion of other criminal activity to independently justify prolonging the stop.") (quoting *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)). In this context, the key question is "whether the officers measurably extended the stop by pursuing unrelated[3] investigations." *Avila*, 106 F.4th at 696 (citing *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). Plaintiff has alleged that, after the

[3]Conduct aimed at securing "[h]ighway and officer safety" during a lawful traffic stop is not considered a "detour" if limited to the original "mission" of the stop. *Rodriguez*, 575 U.S. at 356–57.

initial stop, the Defendant Officers (1) "made statements suggesting that African Americans often 'keep guns' in their fanny packs" and (2) proceeded to search his fanny pack and backpack "without a warrant, consent, or probable cause." (Am. Compl. ¶¶ 12, 13.) Additionally, Plaintiff has alleged that he was "not free to leave" at any time during this encounter. (*Id.* ¶ 15.)[4] Applying common sense, this search goes far beyond the question of whether Plaintiff was wearing his seatbelt. *See Cole*, 21 F.4th at 428–29 (identifying "the ordinary inquiries incident to a traffic stop" which generally focus on "ensuring that vehicles on the road are operated safely and responsibly"). The Court leaves for another day, after further development of the factual record, the question of whether Plaintiff's prolonged detention evolved into a formal arrest at any time. *See, e.g., United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994) ("Subtle, and perhaps tenuous, distinctions exist between a *Terry* stop, a *Terry* stop rapidly evolving into an arrest and a *de facto* arrest.").

The Court also rejects the Defendant Officers' argument that they are entitled to qualified immunity at this early stage of litigation. *See Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (in cases where qualified immunity "will depend on the particular facts of a given case […] the plaintiff is not required initially to plead factual allegations that anticipate and overcome [this defense]") (citation omitted); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) ("an immunity defense usually depends on the facts of the case"); *cf. Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 660 (7th Cir. 2024) (affirming grant of qualified immunity at the pleading stage based on "substantial evidence" available to the reviewing court including "videos of the incident, witness testimony, and reports incorporated into [plaintiff's] pleadings").

Lastly, the Defendant Officers maintain that Plaintiff has failed to sufficiently allege that he was "treated differently by the government based on membership in a protected class, and that [the Defendant Officers] acted with discriminatory intent." (Dkt. 39, at 7 (quoting *Bradley v. Hain*, No. 23 C 5020, 2026 WL 100500, at *4 (N.D. Ill. Jan. 13, 2026); *Doe v. Bd. of Educ.*, No. 19 C 263, 611 F. Supp. 3d 516, 532 (N.D. Ill. Mar. 24, 2020)).) Not so. Plaintiff has explicitly alleged that the Defendant Officers engaged in racial profiling. (Am. Compl. ¶¶ 11, 12.) This allegation is not wholly conclusory, but is bolstered by Plaintiff's allegation that both officers "made statements"—during the course of the underlying traffic stop and subsequent search—"suggesting that African Americans often 'keep guns' in their fanny packs." (*Id.* ¶ 12.) As in *Doe*, the Court finds Plaintiff has pleaded sufficient facts to put the Defendant Officers on notice of Plaintiff's claim against them (*i.e.* that they treated him differently because of his race (African American) and that they had a discriminatory intent when they stopped the Uber vehicle and when they searched his belongings). "Nothing more is needed right now." *Doe*, 611 F. Supp. 3d at 533.

In conclusion, the Court grants the Defendant Officers' motion to dismiss only with respect to the claims alleged against them in their official capacities. In all other respects, the Defendant Officers' motion to dismiss is denied. Plaintiff's claims will proceed on Counts I, II, and III against the Defendant Officers in their individual capacities.

[4] The Court does not understand Plaintiff to be alleging that his pretrial detention, if any, was itself unlawful, and agrees with the Defendant Officers that no such claim appears on the face of the amended complaint.

Dated: September 9, 2026

United States District Judge
Franklin U. Valderrama